## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOE J. BALTAS,
    *Petitioner*,

    v.                              No. 3:22-cv-571 (VAB)

COMMISSIONER OF CORRECTION,
    *Respondent.*

### RULING AND ORDER

Joe J. Baltas ("Petitioner"), incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction for murder and assault.

The Commissioner of Correction ("Respondent") has filed a motion to dismiss the petition for failure to exhaust state court remedies on all claims included in the petition and including some claims not cognizable in a federal habeas petition.

For the following reasons, the motion to dismiss is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The Connecticut Supreme Court determined the jury reasonably could have found the following facts.

> [Mr. Baltas] was involved in a relationship with [Misty] Rock, one of the complaining witnesses in this case, from December, 2005 until October, 2006. At some point during the month of October, the two discussed leaving Meriden, the town in which both of them lived, to start a new life in South Carolina.
>
> On October 25, 2006, Rock was living with her brother, Christopher Laverty (Christopher), her mother Linda Laverty (Linda), and her stepfather, Michael Laverty (Michael). At approximately 10 p.m., Linda and Michael were sitting in

the living room of their apartment watching a movie, while Christopher and Rock were on the second floor of the home. Christopher came downstairs and opened the door to the basement, intending to check on the status of a load of laundry. As he opened the basement door, he encountered a masked person who was dressed all in black, wearing a ski mask, and holding at least one knife. The masked person stabbed Christopher in the stomach, and then moved out of the basement and into the living room, where he proceeded to fatally stab Michael. The masked person then turned to Linda, stated "die, bitch," and stabbed her in the neck. Linda later testified that she recognized the masked person as [Mr. Baltas] because of his eyes, the sound of his voice, and his body mannerisms. The masked person walked to the staircase leading to the upper floor of the home, and while on the staircase, he ran into Rock, who had heard the commotion from upstairs. In the collision, the masked person's knife went through Rock's sweatshirt and t-shirt and inflicted a scratch on her stomach. The masked person then forced Rock in front of him, grabbed her by the hair, and forced her out of the apartment. While this was happening, Christopher grabbed a knife from the kitchen and a telephone and exited the home, running next door to ask a neighbor to call the police. Rock and the masked person then exited the apartment and were walking down the street, away from the apartment. Christopher attempted to stop them, and Rock told him to stop and not come any closer. Christopher then sat down on a bench and called the police himself, identifying [Mr. Baltas] as the masked person who had just assaulted his family.

[Mr. Baltas] and Rock then walked to an abandoned car and sat in it. Rock testified that, at this point, [Mr. Baltas] told her that he had killed Michael and stabbed Linda and, although Rock could not remember if [Mr. Baltas] was still wearing a mask, Rock recognized his voice. [Mr. Baltas] and Rock waited in the car until Rock informed [Mr. Baltas] that she needed to use the bathroom. [Mr. Baltas] led Rock to the Pulaski School, at which point [Mr. Baltas]—who at that time was not wearing a ski mask or a dark shirt—and Rock were confronted by police officers. The police observed [Mr. Baltas] holding a butter knife in his hand and told him to drop it. When [Mr. Baltas] did not comply with their command, the police tasered him and he fell to the ground; as he did so, a folding knife later found to be stained with Michael's blood fell out of [Mr. Baltas'] pocket.

A K-9 officer was also dispatched as a result of Christopher's 911 call, and the officer's dog tracked the path that [Mr. Baltas] and Rock took away from the apartment. The K-9 officer also had his dog perform an "article recovery...." Between the K-9 officer's search and the actions of other police officers in the area, the following items along the path taken by [Mr. Baltas] and Rock were recovered that evening: (1) a ski mask, the interior of which later was tested positive for [Mr. Baltas'] DNA, and the exterior of which tested positive for Michael's blood; (2) a dark, bloody shirt which tested positive for the blood of Linda and Michael; (3) a latex glove stained with the blood of Linda and also possibly of Michael; and (4) a long knife stained with the blood of Michael, which the state medical examiner later

concluded was the weapon that caused his fatal wounds. Tests also indicated that Michael and Linda were the sources of various bloodstains found on [Mr. Baltas'] pants, sneaker, and arms when he was arrested. Finally, the police matched a shoe print that was formed in blood at the crime scene to the shoe of [Mr. Baltas].

*State v. Baltas*, 311 Conn. 786, 790–92 (2014).

### B. Procedural Background

In 2010, a jury convicted Mr. Baltas of murder, assault, burglary, and kidnapping. *Baltas*, 311 Conn. at 789. On direct appeal, the Connecticut Supreme Court overturned the convictions for burglary and kidnapping, but affirmed the convictions for murder and assault. *Id.* at 790. Although the case was remanded for a new trial on the burglary and kidnapping charges, the State of Connecticut chose not to retry Mr. Baltas on those charges. Mr. Baltas remains incarcerated on the murder and assault convictions.

On direct appeal, Mr. Baltas challenged his murder and assault convictions on four grounds: (1) the trial court improperly excluded evidence highly relevant to his defense thereby preventing him from engaging in cross-examination regarding that evidence, (2) the trial court failed to give a hybrid third-party culpability instruction or failed to instruct the jury on Mr. Baltas' theory of defense, (3) the trial court refused to instruct the jury regarding the motive of one complaining witness to testify falsely, and (4) the trial court refused to reverse the convictions which were tainted by improper comments by the prosecutor. *Id.* at 789–90.

On September 8, 2015, Mr. Baltas filed a petition for writ of habeas corpus in state court. In the amended petition, Mr. Baltas asserted claims of prosecutorial misconduct, police misconduct, judicial misconduct, and ineffective assistance of trial counsel. *Baltas v. Commissioner of Corr.*, No. CV154007469, 2020 WL 1745684, at *2 (Conn. Super. Ct. Feb. 25, 2020). The state court denied the petition. The court determined that the claims of prosecutorial

misconduct were procedurally defaulted and barred by *res judicata*, and the claims of police misconduct were barred by res judicata and failed to state a cognizable claim. *Id.* at *3–4.

Mr. Baltas also asserted several examples of ineffective assistance of counsel. He claimed that trial counsel offered a "two person" theory at closing without first consulting him, agreed to the admission of certain exhibits without first reviewing them, failed to properly impeach certain witnesses, failed to call certain witnesses to testify for the defense, failed to consult or hire experts in blood spatter or crime scene reconstruction, failed to impeach Misty Rock with letters she had written, and failed to conduct an adequate investigation. *Id.* at *5. The state court rejected all claims. *Id.* at *5–8. That court also denied certification to appeal. *Id.* at *9.

Mr. Baltas appealed the denial of certification. He argued that the habeas court erred in determining that his right of autonomy was not violated when counsel allegedly conceded his guilt during closing argument and in determining that counsel was not ineffective in making that argument. *Baltas v. Comm'r of Corr.*, 210 Conn. App. 167, 173 (2022). The Connecticut Appellate Court dismissed the appeal, and, on March 1, 2022, the Connecticut Supreme Court denied certification to appeal. *Id*. at 176, *cert. denied*, 342 Conn. 911, 271 (2022).

On April 18, 2022, Mr. Baltas filed this action by petition, asserting six grounds for relief: (1) violation of his Sixth Amendment right to autonomy; (2) actual innocence; (3) ineffective assistance of trial counsel; (4) police misconduct; (5) prosecutorial misconduct; (6) state court error and abuse of discretion; and (7) cumulative error. *See* Pet. at 122–39, ECF No. 1 ("Pet.").

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss a petition for writ of habeas corpus, a court applies the

4

same standard as when reviewing a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). *See Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018). To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Before filing a petition for writ of habeas corpus in federal court, the petitioner must properly exhaust his state court remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1727 (2022) ("A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures."). A petitioner must present the essential factual and legal bases for his federal claims to each appropriate state court, including the highest state court capable of reviewing it, to afford the state courts a full and fair "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (internal quotation marks and citation omitted). "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'" *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

Failure to exhaust state remedies may be excused only if "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam); 28 U.S.C. § 2254(b)(1)(B). A petitioner may not, however, simply wait until appellate remedies are no longer

available and then argue that the claim is exhausted. *See Galdamez v. Keane*, 394 F.3d 68, 72–74 (2d Cir. 2005).

To properly exhaust his claim, the petitioner must present the factual and legal bases of the claim to the state court. *See Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) ("Specifically, [the petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim.") (citations omitted); *see also Caballero v. Keane*, 42 F.3d 738, 740–41 (2d Cir. 1994) ("[T]o reach the merits of [an ineffective representation claim], all of [the] allegations must have been presented to the state courts, allowing them the 'opportunity to consider all the circumstances and cumulative effect of the claims as a whole.'" (citations omitted)).

When a petitioner files a mixed petition, *i.e.*, a petition containing both exhausted and unexhausted claims, the district court is generally required to dismiss the petition. *See Pliler v. Ford*, 542 U.S. 225, 230 (2004) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)). Under some circumstances, however, the district court may stay a mixed habeas petition to enable the petitioner to present his unexhausted claims to the state court and then return to federal court for review of all his claims. A stay should be utilized only in limited circumstances, where the petition contains both exhausted and unexhausted claims, the petitioner demonstrates good cause for failing to exhaust all claims before filing the federal petition, and the petitioner may be time-barred if the case was dismissed. *See Rhines v. Weber*, 544 U.S. 269, 277–78 (2005); *see also Zarvela v. Artuz*, 254 F.3d 374, 380–83 (2d Cir. 2001) (recommending that the district court stay exhausted claims and dismiss unexhausted claims with direction to timely complete the

exhaustion process and return to federal court where dismissal of exhausted claims would result in claims being time-barred by the one-year limitations period for filing a federal petition). Before granting a stay, the district court must determine that "the unexhausted claims are not plainly meritless, [that] the petitioner has good cause for failing to exhaust, and [that] the petitioner did not engage in abusive or dilatory litigation tactics." *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (citing *Rhines*, 544 U.S. at 277–78).

### III.   DISCUSSION

Respondent moves to dismiss the petition as a mixed petition, containing exhausted and unexhausted claims. Respondent also argues that some claims are not cognizable in a federal habeas petition. *See* Mot. to Dismiss, ECF No. 20 (July 18, 2022).

 In opposition, Mr. Baltas argues (1) that all claims were exhausted in documents filed by counsel or his own *pro se* filings; (2) any claims he has not exhausted were the result of interference by other parties, thus demonstrating cause to excuse exhaustion; and (3) if the Court finds any claims to be unexhausted, the case should be stayed rather than dismissed. *See* Opp'n to Mot. to Dismiss at 1–2, ECF No. 29 ("Opp'n").

Mr. Baltas argues that he presented all of the grounds for relief included in this petition to the state appellate courts in *pro se* filings. Mr. Baltas was represented throughout these proceedings. Neither the United States Constitution nor the Connecticut Constitution guarantees a criminal defendant the right to hybrid representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) ("A defendant does not have a constitutional right to choreograph special appearances by counsel."); *State v. Gethers*, 197 Conn. 369, 393–94 (1985) ("[W]e decline the defendant's invitation to . . . construe . . . our state constitution" as permitting hybrid

7

representation.).

A defendant must choose between his right to be represented by counsel or his right to represent himself; he cannot do both at the same time. *See State v. Gibbs*, 254 Conn. 578, 610 (2000) ("[A] defendant *either* may exercise his right to be represented by counsel; or his right to represent himself; but *he has no constitutional right to do both at the same time.*" (internal citations omitted) (emphasis in original)). Thus, as Connecticut does not permit him to file *pro se* pleadings, while represented by counsel, Mr. Baltas has not properly exhausted his state court remedies by including claims in *pro se* filings. *See id.* ("It is . . . well settled that, having made the knowing, intelligent and voluntary choice to avail himself of the services of counsel, a defendant necessarily surrenders to that counsel the authority to make a wide range of strategic and tactical decisions regarding his case.").

Mr. Baltas attempts to excuse his failure to exhaust his state court remedies by claiming that his attorneys would not assert the claims. *See* Pet. at 142 ("The Petitioner notes that in most cases his Appointed or Private Counsel either refused to proffer, brief or argue certain claims on his behalf for there (*sic*) own selfish reasons or out of negligence or misconduct. The petitioner asserts, and will do so under oath he always sought to puruse (*sic*) every claim raised herein, to full exhaustion.").

The Court disagrees.

Judges in this District have held that a petitioner has available means to exhaust state court remedies on a claim that was not included on direct appeal or in a previous habeas corpus action because the petitioner may file a state habeas petition alleging, for example, that habeas counsel was ineffective for failing to include an ineffective assistance of counsel claim based on

certain actions of trial counsel. In such a case, the court found that the claim was not procedurally barred and exhaustion of state court remedies need not be excused. *See Abrams v. Commissioner of Corr.*, No. 3:17cv1732 (MPS), 2019 WL 919581, at \*10 (D. Conn. Feb. 25, 2019) (holding that, although petitioner has no federal constitutional right to effective assistance of habeas counsel, petitioner can exhaust the merits of his claim of ineffective assistance of trial counsel by asserting in state court that habeas counsel was ineffective for failing to include the claim for ineffective assistance of trial counsel in the state habeas petition). This holding is based on the fact that, to determine whether habeas counsel was ineffective, the state court necessarily must address the underlying constitutional claim. *See, e.g.*, *Gonzalez v. Comm'r*, No. 3:11-cv-1012 (VLB), 2012 WL 3000402, at \*4 (D. Conn. July 20, 2012); *Coleman v. Semple*, No. 3:11-cv-512 (JBA), 2012 WL 2515541, at \*5–6 (D. Conn. June 28, 2012). As Connecticut does not limit the number of habeas corpus actions an inmate may file, Mr. Baltas has an available avenue to exhaust his state court remedies on his unexhausted claims.

Mr. Baltas also implies that by raising issues, especially his claim of actual innocence, through his testimony during the state habeas proceeding, he informed the state court of the issues and the court could have addressed the issues if it chose. Mr. Baltas again is mistaken. The Connecticut state courts require that any issues raised in a state habeas proceeding must be included in the petition for writ of habeas corpus. *See Newland v. Comm'r of Corr.*, 322 Conn. 664, 678 (2016) (explaining that a habeas petition is a pleading and must conform to requirements of a complaint; all claims must be included in the petition to afford respondent notice of claims asserted, limit issues to be decided, and avoid surprise).

The Court will now address his various other grounds more specifically.

### A.  Ground One—Sixth Amendment Right to Autonomy

Mr. Baltas first argues that counsel violated his Sixth Amendment right to autonomy by disregarding Mr. Baltas's theory of defense that he was innocent and another person, Misty Rock, committed the murder and assaults. Mr. Baltas argues that, at no time did he agree to a "two assailant" theory of the crimes, and, despite his lack of agreement, counsel advanced this theory in closing argument.

Respondent concedes that Mr. Baltas exhausted his state court remedies on this ground.

### B.  Ground Two—The Actual Innocence Claim

Mr. Baltas claims that he is factually innocent of the crimes. *See id.* at 124–28. On a habeas review, federal courts do not revisit state court factual determinations of guilt. *See Herrera v. Collins*, 506 U.S. 390, 400-01 (1993) ("[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact."). Thus, ground two does not state a cognizable claim and must be dismissed.

Mr. Baltas is correct that allegations of actual innocence may be considered to excuse procedural default. *See Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). The Court has not determined, however, that Mr. Baltas has procedurally defaulted on many claims.

Thus, consideration of Mr. Baltas's allegations of actual innocence is premature.

### C.  Ground Three—The Ineffective Assistance of Counsel Claim

Mr. Baltas contends that trial counsel was ineffective in eight ways: (1) counsel admitted Mr. Baltas's guilt during closing; (2) counsel failed to call witnesses and introduce evidence as to Rock's motive and behavior; (3) counsel failed to adequately challenge the police investigation and misconduct; (4) counsel stipulated to admission of evidence, a pair of Mr.

10

Baltas' blood-soaked boxers, without reviewing or examining them; (5) counsel instructed Mr. Baltas not to testify against Mr. Baltas' wishes; (6) counsel failed to object to an exhibit depicting DNA results in a misleading manner; (7) counsel failed to object to other evidence, including statements Mr. Baltas made before *Miranda* warnings were given; and (8) counsel failed to retain a crime scene reconstruction expert. *See* Pet. at 129–31.

Respondent admits the possibility that Mr. Baltas asserted these examples in his habeas petition, but argues that the operative fact is that the only claim raised in the petition for certification is the ineffective assistance of counsel claim relating to his autonomy claim. Respondent therefore argue that Mr. Baltas has not exhausted his state court remedies on any of the other examples. According to Respondent, Mr. Baltas's argument that he exhausted his state court remedies through his *pro se* filings is unavailing.

Mr. Baltas also argues that he included claims that habeas counsel was ineffective in his motion for new trial. He attaches a copy of the motion to his opposition papers. *See* Ex. 4 to Pet. at 25–32, ECF No. 29-1. Although he states that the trial court denied his motion, he provides no evidence showing that he appealed any denial of the motion to the Connecticut Supreme Court.

Thus, including the claims in his motion does not show that he exhausted his state court remedies on the claims.

### D.  Ground Four—The Police Misconduct Claim

Mr. Baltas contends that the police were prejudiced against him because his father was involved in a national organization with a presence in Meriden; several members of this organization were incarcerated in connection with a murder-for-hire scheme aimed at police officials. He lists nine examples of alleged police misconduct: (1) the officers did not maintain a

11

crime scene log; (2) Detective Sergeant Hetterick planted a ski mask he had seized from Mr. Baltas' home six month earlier; (3) police officers removed a dresser from in front of the basement door and unlocked the door to make it appear Mr. Baltas had entered that way; (4) police tampered with and contaminated the crime scene by moving items after state police concluded their investigation; (5) detectives tampered with witnesses by identifying Mr. Baltas to Christopher Laverty in the hospital before taking his statement and falsely stating that a certain police officer was present when Rock was interviewed; (6) police officers instructed the lab not to perform DNA tests on Rock's clothing; (7) there was a chain of custody problem with items sent to the lab for testing; (8) police failed to preserve blood evidence on Rock's person; and (9) police officers refused to investigate an alternate theory of who committed the crimes despite some officers having suspicions about Rock. *See* Pet. at 132–34.

Mr. Baltas states that the police misconduct claims were included in his state habeas petition. Respondent concedes that Mr. Baltas asserted claims of police misconduct but does not concede that the claims were exactly the same. The habeas court rejected the claims as procedurally barred, determining that Mr. Baltas should have asserted these claims during the criminal trial. *See Baltas*, 2020 WL 1745684, at *4.

Regardless of any disparity in the claims, Respondent argues that Mr. Baltas did not include any police misconduct claims in his petition for certification to the Connecticut Supreme Court.

A review of the petition for certification filed by counsel shows only claims relating to the right to autonomy and ineffective assistance of counsel for violating that right. *See* App. J to Respondent's Mem. in Supp. of Mot. to Dismiss, ECF No. 21-10. Baltas contends that he

included these claims in his *pro se* appeal. As discussed above, however, Baltas could not file *pro se* appeals while represented by counsel and, therefore, this action does not constitute proper exhaustion. Finally, Baltas presents no evidence showing that he filed a state habeas action asserting ineffective assistance of counsel for failing to pursue the police misconduct claims.

### E.  Ground Five—The Prosecutorial Misconduct Claim

Mr. Baltas lists six examples of prosecutorial misconduct: (1) a prosecutor sent witness Linda Laverty copies of the statements of all witnesses resulting in her making substantial changes to her statement; (2) the prosecutor elicited prejudicial testimony that had previously been ordered precluded regarding Mr. Baltas's relationship with an organization/private club; (3) the prosecutor misrepresented the strength of the DNA evidence; (4) during closing argument, the prosecutor misrepresented facts not in evidence by telling the jury that Linda Laverty made only two changes to her 28-page statement when she made over 100 changes, and expressed his opinion as to the credibility of the witnesses; (5) the prosecutor facilitated perjury by providing all statements to witness Linda Laverty, who lived with other witnesses, thereby permitting them to corroborate their testimony; and (6) the prosecutor permitted Detective Sullivan to vouch for the credibility of other police witnesses. *See* Pet. at 134–36.

Like the claims of police misconduct, no claims of prosecutorial misconduct are included in the petition for certification in the habeas case. Mr. Baltas did make a reference to prosecutorial misconduct on direct appeal. There, however, he identified only introduction of a domestic violence episode between Mr. Baltas and Ms. Rock, allegedly vouching for Ms. Rock's credibility, and misstating the number of changes Linda Laverty made to her statement. *See Baltas*, 311 Conn. at 824–26.

Thus, Mr. Baltas has exhausted his prosecutorial misconduct claim only as to the fourth example of prosecutorial misconduct claim. As explained above, any attempt to assert these claims in a *pro se* filing does not constitute proper exhaustion and Mr. Baltas has not shown that he filed a state habeas action challenging counsel's failure to assert those claims.

### F.   Ground Six—The State Court Errors and Abuse of Discretion Claims

Mr. Baltas lists errors allegedly committed by the trial court, Connecticut Supreme Court, the habeas court, and the Connecticut Appellate Court.

Mr. Baltas identifies five alleged errors by the trial court: (1) the court erred and abused its discretion by failing to declare a mistrial when the prosecutor elicited testimony that Mr. Baltas had a connection to the "Diablos" and jurors expressed fears of reprisal; (2) the court gave a misleading jury instruction; (3) the court abused its discretion by refusing to permit evidence of Ms. Rock's confession; (4) the court abused discretion by admitting into evidence a DNA exhibit that omitted population ratios and summarized the lab results in a misleading form; and (5) the judge failed to disclose that she was formerly a prosecutor on the state/federal task force that prosecuted Mr. Baltas's relatives. *See* Pet. at 136–37.

Mr. Baltas lists two errors by the Connecticut Supreme Court: (1) the court erred when it determined that omitted evidence about Ms. Rock's relationship with her stepfather related only to the burglary and kidnapping charges; and (2) erred in denying certification on his habeas appeal. *Id.* at 137–38.

Mr. Baltas alleges that the state habeas court erred in seven ways: (1) the court reviewed Mr. Baltas's ineffective assistance of counsel claims individually rather than cumulatively; (2) the court made inconsistent rulings; (3) the court refused to apply the *McCoy* standard to Mr.

Baltas's autonomy claim and reviewed the claim under the *Strickland* standard; (4) the court permitted fabricated evidence to be entered by the State after Mr. Baltas factually demonstrated the evidence was fabricated; (5) the court refused to admit Mr. Baltas's DNA evidence; (6) the court erred when it cut off Mr. Baltas's testimony without an objection from the respondent and said he would not permit Mr. Baltas to "pontificate"; and (7) the court was prejudiced against Mr. Baltas. *Id*. at 138-39.

Finally, Mr. Baltas alleges that the Connecticut Appellate Court erred when it found that statements made by trial counsel did not admit Mr. Baltas's guilt and abused its discretion when it affirmed the habeas decision. *Id.* at 139.  The Respondent concedes that some, but not all of the examples have been exhausted.

Mr. Baltas lists five alleged errors by the trial court. The only one raised on direct appeal relates to jury instructions – that is "that court gave a misleading jury instruction. *See id.* The Respondent conceded that Mr. Baltas has exhausted his state court remedies on this alleged error. The other four alleged errors were not raised on direct appeal and were not included in the petition for certification from the habeas appeal.

Thus, the remaining alleged errors—namely that: the court erred and abused its discretion by failing to declare a mistrial when the prosecutor elicited testimony that Mr. Baltas had a connection to the "Diablos" and jurors expressed fears of reprisal; the court abused its discretion by refusing to permit evidence of Ms. Rock's confession; the court abused discretion by admitting into evidence a DNA exhibit that omitted population ratios and summarized the lab results in a misleading form; and the judge failed to disclose that she was formerly a prosecutor on the state/federal task force that prosecuted Mr. Baltas's relatives, *see* Pet. at 136–37—are

15

unexhausted.

Mr. Baltas lists seven alleged errors by the habeas court. The only claim raised in the habeas appeal related to his autonomy claim.

Thus, Mr. Baltas has exhausted his state court remedies only with regard to the third example. As Mr. Baltas's *pro se* filings are insufficient to properly exhaust his state court remedies, the other examples are unexhausted. Mr. Baltas's claim regarding the Connecticut Appellate Court is a restatement of his autonomy claim which he raised in his petition for certification. Thus, this claim is exhausted.

Finally, Mr. Baltas lists two alleged errors by the Connecticut Supreme Court. As the Respondent does not address those claims, the Court considers them exhausted.

### G.  Ground Seven—The Accumulated Errors Claim

As support for this ground, Mr. Baltas merely refers to the above grounds. He concedes, however, that this is not a separate ground for relief. *See* Mem. in Supp. of Opp'n at 5, ECF No. 29-3 ("[C]umulative error is not a stand alone claim but a request for the District Court to review the errors and abuses of the record cumulatively."); Exs. to Opp'n, ECF No. 30.

Thus, the Court does not consider this ground at this time.

### H.  Issuance of a Stay

Mr. Baltas has filed a mixed petition, containing exhausted and unexhausted claims. Under *Rhines*, the Court should stay, rather than dismiss the petition if two conditions are met. 544 U.S. at 277–78. The petitioner must demonstrate good cause for failing to exhaust all claims before filing this action, and he may be time-barred if the Court dismisses the petition. *Id.* Mr. Baltas has made no showing of good cause in response to the motion to dismiss.

16

Federal habeas corpus statutes impose a one-year statute of limitations on federal petitions for writ of habeas corpus challenging a judgment of conviction imposed by a state court. *See* 28 U.S.C. § 2244(d)(1). The one-year limitations period commences when the petitioner's conviction becomes final. That date is defined as the completion of the direct appeal or the conclusion of the time within which an appeal could have been filed,[1] *id.*, and may be tolled for the period during which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[,]" 28 U.S.C. § 2244(d)(2). *See also Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (direct review of a conviction includes review by Supreme Court on petition for writ of certiorari).

The Court notes that Mr. Baltas's direct appeal was concluded on October 28, 2014, ninety days after the Connecticut Supreme Court ruled on the state's motion for reconsideration, during which time Mr. Baltas could have filed a petition for certiorari at the United States Supreme Court. He filed his first state habeas petition on September 8, 2015, *see Baltas*, 2020 WL 1745684, at *2 ("The petitioner commenced the present action on September 8, 2015."), at which time there were about 40 days remaining in the limitations period. Before the first state habeas action concluded, Mr. Baltas filed another state habeas action which the Respondent

---

[1] The statute also provided that the limitations period may commence on:

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date of which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). None of these provisions are relevant to this action.

indicates also challenges this conviction and which is still pending. Thus, the forty days still remain.

If Mr. Baltas chooses, he may file another state habeas action to exhaust his unexhausted claims. Doing so will have no effect on the limitations period as the period continues to be tolled by the fling of the second state habeas action. Once all habeas actions are concluded, Mr. Baltas will still have forty days to return to federal court and file a new section 2254 action.

Thus, a stay is not required.

## IV.     CONCLUSION

The Respondent's Motion to Dismiss, ECF No. 20, is **GRANTED**.

The petition is **DISMISSED** without prejudice for failure to exhaust state court remedies on all claims before commencing this action.

The Court concludes that jurists of reason would not find it debatable that Mr. Baltas failed to exhaust his state court remedies on all grounds asserted in this Petition. Thus, a certificate of appealability will not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that when a district court denies a habeas petition on procedural grounds, a certificate of appealability should issue if jurists of reason would find debatable the correctness of the district court's decision).

Mr. Baltas is informed that, if he wishes to proceed only on the grounds for which he has exhausted his state court remedies, he may file an amended petition containing only the exhausted claims. He should do so by **January 27, 2023.** Mr. Baltas is cautioned, however, that if he chooses to proceed only on the exhausted claims, he will run the risk that any subsequent petition containing the unexhausted claims will not be considered by this Court as it would

constitute a second or successive petition. *See* 28 U.S.C. § 2244(b)(2) (stating that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed" subject to limited exceptions).

     **SO ORDERED** at Bridgeport, Connecticut, this 16th day of December, 2022.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE